**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DISTRICT**

| | | |
|---|---|---|
| EDITH GRIGSBY, individually and as | * | |
| Personal Representative of the Estate of | | |
| Saundra Grigsby, Deceased, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. AW 02-4131 |
| DONALD FETTERS, *et al.*, | * | |
| Defendants. | * | |
| | **** | |

**MEMORANDUM OPINION**

Plaintiffs filed this wrongful death and survival action against Donald Fetters ("Fetters") and his employer, Consolidated Freightways Corporation ("Consolidated") (collectively, "Defendants"), claiming that Fetters' negligent operation of his vehicle caused the untimely death of Saundra Grigsby ("Decedent" or "Grigsby"). Defendants removed this action from the Circuit Court of Prince George's County, Maryland pursuant to 28 U.S.C. §1441(a). Currently before the Court are Defendants' Motion for Summary Judgment [62] and Plaintiffs' Cross-Motion for Summary Judgment [65]. The court has reviewed the entire record, as well as the pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendants' Motion for Summary Judgment and will deny Plaintiffs' cross-motion.

**FACTUAL & PROCEDURAL BACKGROUND**

**I.      Factual Background**

The following facts present an undisputed account of the events leading to this action unless otherwise indicated. During all relevant times, Fetters was employed as a truck driver by Consolidated.

On November 8, 2000, at approximately 2:35 a.m., Fetters was in the twelfth hour of a driving shift. It is uncontested that this shift was within the scope of Fetters' employment with Consolidated. Fetters had finished the first leg of his trip, a route between Ohio to Baltimore, and was traveling to Richmond, his final destination of the evening. Fetters was operating a 1993 Consolidated tractor-unit heading southbound on Interstate 95 ("the Beltway") near the intersection of the Beltway and Livingston Road in Prince George's County, Maryland. Although the weather was clear, the nearby street lights did not provide ample lighting, rendering this area of the Beltway particularly dark.

The Beltway is a four lane highway that circles the Washington D.C. area. For the purposes of this opinion, the four lanes of the Beltway will be referred to as, from left to right, lanes one, two, three, and four. As Fetters was driving south on the Beltway, Grigsby was operating a 1987 Mercury Marquis in the second lane from the right on the same southbound side of the Beltway. Grigsby's vehicle was untitled, uninsured, unregistered, and uninspected. Grigsby's car became disabled and stopped in lane three, a fast lane on the Beltway. Although the road has a significant slope to the right, such that a vehicle placed in neutral could drift off to the shoulder of the Beltway, Grigsby's vehicle remained nonmoving in lane three. Grigsby remained in the disabled vehicle for approximately ten minutes. Assuming all the facts in the light most favorable to Plaintiffs, Grigsby turned on her emergency lights, which were dimly lit in this very dark section of the Beltway.[1] Grigsby did not exit the vehicle, nor did she take any further measures to make her car more visible during these ten minutes.

---

[1] Defendants dispute whether the emergency lights had been switched on. Defendants base their argument on two eyewitnesses just prior to impact as well as Fetter's own testimony. Plaintiffs rely upon the testimony of a driver who passed Decedent ten minutes prior to the accident.

Fetters was traveling southbound at roughly 63 miles per hour in a 55 mile per hour zone. Fetters, also driving in lane three of the Beltway, had just passed another vehicle as he approached Grigsby's stopped car.[2] Although the highway was straight and otherwise unobstructed, Fetters did not observe Grigsby's car located directly in front of him in lane three. Fetters' truck crashed into the back of Grigsby's vehicle and both vehicles became engulfed in flames. Despite suffering burns to over fourteen percent of his body, Fetters survived the accident. Tragically, Grigsby died as a result of the collision. The autopsy report noted that, at the time of the accident, Grigsby had a blood alcohol level of 0.16%.

## II.     Procedural History

On October 17, 2002, Plaintiffs filed their Complaint against Fetters and his employer, Consolidated, in the Circuit Court for Prince George's County, Maryland, alleging wrongful death and survival under Maryland negligence law. On December 19, 2002, Defendants removed this action to this Court on the basis of diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

On November 18, 2004, Defendants filed the instant Motion for Summary Judgment, arguing that Decedent was contributorily negligent and/or assumed the risk of her injuries. On December 13, 2004, Plaintiffs responded to Defendants' motion by filing a Cross-Motion for Summary Judgment, arguing negligence as a matter of law. As all motions are ripe and ready for disposition, an Opinion will now be issued.

### STANDARD OF REVIEW

Pursuant to Federal Rule 56(c), summary judgment will be granted if, viewed in the light most

---

[2]Defendants dispute that Fetters was traveling at the 63 miles per hour speed estimated by a witness. Fetters maintains his tractor-unit was traveling at approximately 58 miles per hour.

3

favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . ." Fed. R. Civ. P. 56(c). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Once the moving party meets its burden demonstrating an absence of genuine issue of material fact, the burden shifts to the party opposing the motion to bring forth facts sufficient to create a triable issue of fact. *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 718-19 (4th Cir. 1991) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247-48 (1986)). Therefore, the Court will examine the record to decide, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**DISCUSSION**

At the outset, the Court notes that the parties assume that Fetters was negligent in speeding and in failing to observe Decedent's vehicle. However, in their Motion For Summary Judgment, Defendants raise two affirmative defenses which they argue should relieve them of liability in this case. Specifically, Defendants argue: (1) Decedent was contributorily negligent as a matter of law; and (2) Decedent assumed the risk of her injuries.

**I.  Contributory Negligence**

Defendants argue that Plaintiffs are barred recovery because Decedent was contributorily negligent as a matter of law. Specifically, Defendants claim the following actions on the part of Decedent constitute

4

negligence that contributed to the cause of the accident: (1) stopping a dimly lit vehicle on the travel portion of the Beltway; (2) failing to take minimal measures to alert her fellow motorists as to the presence of her vehicle; (3) failing to exit her vehicle; (4) failing to remove her vehicle from the roadway; and (5) driving while under the influence of alcohol.

In Maryland, contributory negligence indicates a failure to observe reasonable care for one's own safety. *Faith v. Keefer*, 736 A.2d 422, 443 (Md. Ct. Spec. App. 1999). Contributory negligence is doing of something a reasonable person would not do, or failing to do something that a reasonable person would do, under the circumstances. *Id*. Maryland Courts have repeatedly and uniformly held that, to constitute contributory negligence as a matter of law, "the negligent act of the plaintiff relied on must be prominent, decisive, and one about which ordinary minds would not differ in declaring it to be negligence." *Miller v. Michalek*, 281 A.2d 117, 119 (Md. Ct. Spec. App. 1971) (*quoting Yockel v. Gerstadt*, 154 Md. 188, 189 (Md. 1927) (internal quotations omitted)); *see Williamson Truck Lines, Inc. v. Benjamin*, 222 A.2d 375, 379 (Md. 1966) ("It is only where the minds of reasonable persons cannot differ that the court is justified in deciding the question as a matter of law.").

Defendant has the burden of proving contributory negligence. *McQuay v. Schertle*, 730 A.2d 714, 720 (Md. Spec. App. 1999) (citing *Sears v. Baltimore Ohio R.R. Co.*, 148 A.2d 366, 368 (Md. 1959)). When a defendant raises the defense of contributory negligence, Maryland law accords a presumption of due care to a decedent that died as a result of a defendant's alleged negligence. *Faith*, 736 A.2d at 447. This presumption of due care is imposed in order to fill the evidentiary gaps created by the plaintiff's inability to testify as to his or her actions, unless the court concludes the evidence is legally insufficient or is so conclusive that it rebuts the presumption as a matter of law. *Id.*; *Mcquay*, 730 A.2d

at 731-39; Md. Rule Evid. 5-301.

Considering all the evidence in the light most favorable to Plaintiffs, the Court finds that Decedent was contributorily negligent as a matter of law and Plaintiffs are thus barred from recovery.  Although the Court recognizes that contributory negligence is generally a question for the jury, *Williamson Truck Lines, Inc.*, 222 A.2d at 379, Decedent's actions in the instant case were of such a prominent and decisive nature that they leave no room for reasonable minds to differ as to her negligence.

In similar cases, Maryland Courts have found that a plaintiff's failure to exit an obviously dangerous situation, when the plaintiff had the time and ability to do so, constitutes contributory negligence.  *See Martin v. Sweeny*, 114 A.2d 825, 827 (Md. 1955); *Belleson v. Klohr*, 264 A.2d 274, 278-79 (Md. 1970).  *Martin* is instructive in the instant case.  The plaintiff in *Martin* was injured when her stationary vehicle was struck from behind in the fast lane of a highway.  *Id.*  The plaintiff remained in the nonmoving vehicle for approximately one and a half minutes prior to the accident, while the driver attempted to signal oncoming traffic with a flashlight.  *Id.*  Reasoning that the plaintiff could and should have used that time to exit the vehicle the plaintiff was held to be contributorily negligent as a matter of law.  114 A.2d at 827.

In this case, Decedent was also injured when her nonmoving vehicle was struck from behind in the fast lane of the Beltway.  Grigsby remained in her car for approximately *ten* minutes without a cognizable effort to warn oncoming traffic, beyond flashing dimly lit emergency lights.  As such, Grigsby did not take even the same amount of care as the plaintiff in *Martin*, who had her companion go out to flash an additional emergency light.  Accordingly, Decedent's solitary evasive action, turning on her dim hazard lights while stopped on the middle of the Beltway, does not satisfy an objective standard of due care in this

dangerous situation. *See Martin*, 114 A.2d at 827.

Additionally, the Maryland Court of Appeals has held that a driver is negligent if the driver fails to see what is clearly visible with nothing obstructing his or her view. *Dashiell v. Moore*, 11 A.2d 640, 644 (Md. 1940). Even taking the evidence in the light most favorable to Plaintiffs, Grigsby having been stationary on the dark highway for ten minutes, should have seen that her lights were only dimly lit. Realizing this, Grigsby should have realized her lights were barely lit and should have taken other measures to escape her vehicle or otherwise prevent an accident. *Compare Martin*, 814 A.2d at 827 (holding that plaintiff was contributorily negligent as a matter of law for remaining in the *fast lane* of a highway in her vehicle despite an attempt to warn oncoming traffic with lights), *with Williamson Truck Lines, Inc.*, 222 A.2d at 382 (holding that plaintiff was not contributorily negligent as a matter of law when his stopped vehicle remained in the *slow lane* and the plaintiff *tested his lights*, which could be seen over a quarter mile down the road). Grigsby took no such evasive action.

The Court also finds Decedent's blood alcohol level relevant to the issue of contributory negligence. While a blood alcohol content over the legal limit[3] alone is not necessarily sufficient to find contributory negligence as a matter of law, it is a strong indication of negligence *per se*. *Quinn Freight Lines, Inc. v. Woods*, 283 A2d. 624, 628 (Md. Ct. Spec. App. 1971); *see also Nat'l Mut. Ins. Co. v. Anderson*, 864 A.2d 201, 207 (Md. Ct. Spec. App. 2004) ("[I]t is beyond a cavil that Jones, as an unlicenced driver operating a motor vehicle under the influence of alcohol, was contributorily negligent as a matter of law.").

---

[3] Operating a vehicle with over a .08% blood alcohol level is in violation of Md. Code Ann., Transportation Article II, §21-902.

Here, Decedent's blood alcohol level at the time of the accident was .16%. This raises a strong presumption by the Court that Decedent did not exercise the requisite due care created by the dangerous situation.

Moreover, Plaintiffs fail to offer any evidence indicating that Decedent took evasive action in an attempt to avoid injury. Instead, Plaintiffs merely speculate as to what Decedent might have been doing during the ten minutes that passed between her car becoming disabled and the time of the accident. In *Baltimore & O.R. Co.*, the Maryland Court of Appeals considered an analogous situation, where a plaintiff speculated as to why the decedent may not have seen an oncoming train, which hit the decedent causing fatal injury, as the decedent, under the influence of alcohol crossed the tracks:

> Whether he loitered upon the crossing after he passed out of sight of the witness Sykes, or whether the condition in which his free indulgence in beer left him so blunted and confused his senses as to deprive him of the ability to exercise that measure of care which his situation demanded, cannot now be told and must remain a matter of speculation. The appellees [plaintiffs] not having been able to produce any explanation for his failure to avoid the train, when by the exercise of proper care he might have seen or heard it in time to save himself, they cannot recover for any injury they may have sustained from his death.

*Baltimore & O.R. Co. v. State*, 53 A. 672, 674 (Md. 1902). Plaintiffs have conceded that a jury trial would not lead to the discovery of any evidence as to what Decedent was doing during that ten minute span. Nor have Plaintiffs provided the Court with a plausible explanation as to why Decedent failed to exit her vehicle. Plaintiffs will therefore not be able to refute the overwhelming evidence that Decedent failed to take the same evasive measures that a reasonable person would have taken in the situation.

Furthermore, Defendants correctly assert that Grigsby's actions should not be given the presumption of due care sometimes afforded to the actions of decedents in response to a contributory

8

negligence defense. In the instant case, the evidence is conclusive that Decedent failed to take reasonable actions to avoid a collision after her car broke down in the middle of the Beltway. *See McQuay*, 730 A.2d at 734 (citing *Grier v. Rosenberg*, 131 A.2d 737 (Md. 1957) (explaining that, once conclusive evidence is presented by the defendant that rebuts the presumed facts, the burden shifts to the plaintiff to prove the presumed fact). Here, Plaintiffs are unable to rebut Defendants' evidence that Grigsby did not use due care by remaining her vehicle in a fast lane of the Beltway for a full ten minutes after her car became disabled. As such, Plaintiffs' evidence is legally insufficient to require a presumption of due care.

In conclusion, this Court finds no genuine issue of material fact with regard to Decedent's contributory negligence. Assuming Fetter's negligence, Decedent, by remaining in a stationary dimly lit vehicle for ten minutes in the fast lane of a dark highway, without taking minimal measures to help avoid an accident, while under the influence of alcohol, was contributorily negligent as a matter of law. Mere speculation, unsupported by any evidence, as to the reasons that Grigsby did not exercise due care will not create a genuine issue of fact. Thus, the Court finds Decedent contributorily negligent and Plaintiffs are consequently barred from recovery.

**II.    Assumption of the Risk**

Even assuming Plaintiffs can survive the contributory negligence hurdle, Plaintiffs' claims are precluded because Decedent assumed the risk of her injuries. Defendants argue that Grigsby assumed the risk by: (1) remaining in her vehicle for ten minutes on the dark Beltway; and (2) operating a vehicle while under the influence of alcohol. The Court agrees.

In Maryland, assumption of the risk is "an intentional and voluntary exposure to a known danger and, therefore, consent on the part of the plaintiff to relieve the defendant of an obligation of conduct

9

toward him and to take his chances from harm from a particular risk." *Saponari v. CSX Transp., Inc.*, 727 A.2d 396, 399 (Md. Ct. Spec. App. 1999). In order to demonstrate that Decedent assumed the risk, Defendants must prove that Decedent: (1) had knowledge of the risk of the danger; (2) appreciated that risk; and (3) voluntarily confronted the risk of danger. *Saponari*, 727 A.2d at 399 (*quoting ADM P'ship v. Martin*, 702 A.2d 730 (Md. 1997)). In Maryland, assumption of the risk, like contributory negligence, completely bars a plaintiff from recovery. *Id.*

In determining whether an actor assumed the risk of his or her injuries, an objective standard must be applied and "a plaintiff will not be heard to say that he did not comprehend a risk which must have been obvious to him." *Saponari*, 727 A.2d at 399. Additionally, although the issue of assumption of the risk is normally one for the jury, "if it is clear that an individual of normal intelligence, in the plaintiff's position, must have understood the danger, then the issue is for the court." *Id.*

First, the Court concludes that Decedent should have known and appreciated the risk of remaining in her stationary, dimly lit vehicle in the middle of the Beltway. Indeed, a person of normal intelligence, sitting in a disabled vehicle in a fast lane of the Beltway at a dark section of the road with lights dimly flashing, would appreciate that he or she was in a place of danger, and ran the risk of being hit by oncoming traffic. Moreover, Plaintiff has offered no evidence that would indicate that Grigsby was unable to appreciate this risk.

Additionally, the Court finds that Decedent voluntarily confronted the danger by remaining in the vehicle for a full ten minutes after her car had stalled. It is undisputed that Grigsby remained in her vehicle – she did not try to exit the car, nor did she attempt to move it from the Beltway. Instead, Decedent chose to stay in the vehicle for a full ten minutes. In doing so, Decedent voluntarily confronted the imminent

10

danger. *See Saponari*, 727 A.2d at 400 (finding that Decedent, by choosing to cross the railroad tracks instead of using the overpass, voluntary assumed the risk of being struck by a train).

Plaintiffs argue that, due to Decedent's death, it is impossible to know what Decedent was doing during the ten minute interval before she was stuck on the highway. Thus, Plaintiffs contend that the question of whether she assumed the risk of the accident should go to the jury. Again, this Court cannot agree. Plaintiffs cannot create a genuine issue of material fact for summary judgment through "mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Here, lacking any evidence, Plaintiffs attempt to defeat summary judgment by speculating that Grigsby might not have been capable of voluntarily assuming the risk of injury. Plaintiffs' unsupported speculation is insufficient to overcome the clear facts of this case – that Decedent chose to remain in a dimly lit disabled vehicle for ten minutes on a middle lane of a dark highway – and create a genuine issue of fact. Thus, the Court concludes, Decedent assumed the risk of her injuries as a matter of law.[4]

### III.     Last Clear Chance

Plaintiffs argue that, even if this Court were to find Grigsby contributorily negligent, Fetters had a fresh opportunity to avoid the collision and is therefore liable for Grigsby's death. Specifically, Plaintiffs contend that, because he was speeding and not paying attention to the road, Fetters was unable to break and avoid the accident. The Court does not agree.

---

[4]Moreover, this Court believes that Decedent's blood alcohol level indicates that she assumed the risk of losing control on the Beltway. However, the Court need not discuss this point as Decedent has already been found to have assumed the risk by remaining in her vehicle for ten minutes.

A plaintiff that has been found to be contributorily negligent may still be able to recover damages from a negligent defendant under the last clear chance doctrine. In order to prevail under the last clear chance doctrine, a plaintiff must prove: (1) the defendant was negligent; (2) the plaintiff was contributorily negligent; and (3) a new or intervening event afforded the defendant a fresh opportunity (of which he fails to avail himself) to circumvent the consequences of his original negligence. *Burdette v. Rockville Crane Rental, Inc.,* 745 A.2d 457, 469 (Md. Ct. Spec. App. 2000) (internal citations omitted). For the doctrine to apply the acts of negligence must have been occurred not concurrently, but in a distinct order. *Roberts v. Fairchild*, 287 A.2d 778, 781 (Md. Ct. Spec. App. 1972).

At the outset, Defendants' negligence is not in dispute. Furthermore, the Court has already determined Decedent to have been contributorily negligence as a matter of law. The Court will thus focus on the third prong of the last clear chance doctrine – whether Fetters had a fresh opportunity to avoid the consequences of his original negligence. Here, Plaintiffs failed to bring forth any evidence that demonstrates Fetters had a fresh opportunity to avert the consequences of the accident. More specifically, Plaintiffs have not shown that Decedent's negligence occurred prior to, and not concurrent with, Fetters' negligence. To the contrary, the Court finds that Grigsby's negligent act – remaining in her dark car in the fast lane of the Beltway – was concurrent with Fetters' negligence; Decedent's negligence continued throughout the ten minutes that she remained in her stationary vehicle. Therefore, any negligent act committed by Fetters that may have contributed to the accident occurred simultaneously with Grigsby's negligence, precluding the application of the last clear chance doctrine. *Id*. Thus, Plaintiffs cannot recover based on the theory of the last clear chance.

**IV.    PLAINTIFFS' CROSS-MOTION**

For the reasons stated above, finding Grigsby to have been contributorily negligent as a matter of law, the Court has fully considered the arguments raised in Plaintiffs' Cross-Motion.

## CONCLUSION

For all of the aforementioned reasons, the Court finds Decedent, to have been contributorily negligent as a matter of law and to have assumed the risk of her injuries. Accordingly, Defendants' Motion for Summary Judgment [62] is GRANTED. Plaintiffs' Cross-Motion for Summary Judgment [65] is DENIED. An Order Consistent with this Opinion will follow.

June 29, 2005 /s/
Date Alexander Williams, Jr.
United States District Court